UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SJP PROPERTIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:14-CV-694-JAR |
| | ) |
| MOUNT VERNON FIRE INSURANCE | ) |
| COMPANY, [1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff SJP Properties, Inc. ("SJP") brings this action against Defendant Mount Vernon Fire Insurance Company ("Mount Vernon") to recover damages under an insurance policy. This matter is before the Court on Mount Vernon's Motion for Summary Judgment (Doc. No. 11) and SJP's Partial Motion for Summary Judgment as to the Extent of Coverage Only. (Doc. No. 13) The motions are fully briefed and ready for disposition.

As a threshold matter, Mount Vernon moves to strike SJP's Additional Statement of Material Facts for failing to comply with the requirements of Federal Rule of Civil Procedure 56(c)(1) or E.D.Mo. L.R. Rule 7-4.01(E). More specifically, Mount Vernon argues SJP states no additional facts; instead, SJP makes a number of arguments unsupported by other materials in the record. (Doc. No. 19) Motions to strike are not favored and infrequently granted, because they propose a drastic remedy. Stanbury Law Firm, P.A. v. Internal Revenue Service, 221 F.3d 1059, 1063 (8th Cir.2000). Nevertheless, resolution of such a motion lies within the broad discretion of

---

[1] Defendant was improperly named as United States Liability Insurance Company d/b/a United States Liability Insurance Group. However, the parties have treated this action as if Mount Vernon was substituted as the defendant, so the Court will consider the pleadings amended and treat it as such. The Clerk of Court is hereby directed to change the caption of this case accordingly.

the Court. Id. Rule 12(f) authorizes a court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f).

A "pleading" as defined in Rule 7(a) does not include statements of fact submitted in support of, or in opposition to, a motion for summary judgment. Thus, there is no specific authority in the Federal Rules for striking a party's statement of uncontroverted facts. See Nelson v. Special Administrative Bd. of St. Louis Public Schools, 2012 WL 5508394, at *1-2 (E.D. Mo. Nov. 14, 2012) (citing United States v. Hawley, 812 F.Supp.2d 949, 962 n. 2 (N.D. Iowa 2011) (denying a motion to strike a statement of material facts offered in opposition to a motion for summary judgment)).

Accordingly, Mount Vernon's motion to strike will be denied. The Court will examine the entire record, including SJP's Additional Statement of Material Facts and any properly supported factual contentions, to determine whether there are genuine disputes regarding material facts precluding the entry of summary judgment. See Fabian v. St. Louis Rams Partnership, 2014 WL 222816, at *1 (E.D.Mo. Jan. 21, 2014). Mere arguments, speculation and/or conclusions fail to create a genuine issue of material fact sufficient to defeat summary judgment.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on

that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir.1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal–Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D.Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (quoting Anderson, 477 U.S. at 251–52).

**Facts[2]**

SJP is in the business of buying and selling foreclosed properties. On July 13, 2006, SJP purchased property known and numbered as 6 Mintert Manor Drive, St. Louis, Missouri 63136 ("the Property") at a foreclosure sale. The Property was not inspected either prior to or after the purchase. Without an interested buyer, the Property sat vacant for more than two years. During

---

[2] The facts are taken from Mount Vernon's Statement of Uncontroverted Facts (Doc. No. 12) and SJP's Statement of Uncontroverted Material Facts. (Doc. No. 15) Because SJP did not respond to Mount Vernon's Statement of Uncontroverted Facts, it is deemed to have admitted all the facts therein. E.D. Mo. L.R. 4.01(E). See Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877).

that time, according to Stanley Plocker, the sole owner and employee of SJP, no one was regularly checking on the Property. (Deposition of Stanley Plocker ("Plocker depo."), Doc. No. 12-4 at 16:9-17:1)

The Property was insured under commercial property insurance policies issued by Mount Vernon, effective March 8, 2006 to March 8, 2009.[3] Among other provisions, the Policies contain a clause providing coverage for vandalism, an exclusion for loss or damage "caused by or resulting from theft," and an exception to the theft damage exclusion for "building damage caused by the breaking in or exiting of burglars." The Policies further exclude loss or damage caused directly or indirectly by "fungus, wet rot, dry rot and bacteria," water leaking from any part of a system containing water, or by continuous or repeated seepage or leakage of water over a period of 14 days or more.

The pertinent provisions read as follows:

**A. Covered Causes of Loss**

When Basic is shown in the Declarations, Covered Causes of Loss means the following:

> 8. Vandalism, meaning willful and malicious damage to, or destruction of, the described property.
>
> We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

(Doc. No. 12-7 at 49)

**B. Exclusions**

---

[3] Mount Vernon issued three policies to SJP over this period of time: Policy No. CP2129567, effective March 8, 2006 to March 8, 2007; Policy No. CF2115410, effective March 8, 2007 to March 8, 2008; and Policy No. CF2115410A, effective March 8, 2008 to March 8, 2009. (See Doc. Nos. 12-7, -8, -9) Because the policy provisions at issue are identical among these policies, the only difference being their effective dates, the policies will be referred to collectively as "the Policies."

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    h. "Fungus", Wet Rot, Dry Rot and Bacteria

    Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

    But if "fungus", wet or dry rot or bacteria results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

    . . .

    2. We will not pay for loss or damage caused by or resulting from:

    c. Leakage or discharge of water or steam from any part of a system or appliance containing water or steam (other than an Automatic Sprinkler System), unless the leakage or discharge occurs because the system or appliance was damaged by a Covered Cause of Loss. But we will not pay for loss or damage caused by or resulting from continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

(Doc. No. 12-7 at 51) The applicable deductible under the Policies is $2,500. (Id. at 93)

On or about October 31, 2008, the Property was broken into and burglarized. On November 1, 2008, SJP reported to the police that kitchen cabinets and copper pipes and wiring had been stolen. (Deposition of Officer William Wittkoetter ("Wittkoetter depo."), Doc. No. 12-6 at 8:1-14; 9:18-25) The burglars damaged the Property to extract the copper piping. SJP filed a claim with Mount Vernon seeking coverage for this damage under the Policies. Mount Vernon denied coverage, except for damage to the screen door and glass panel of the basement door where the vandals broke in, because any damages sustained were the result of "theft" and, therefore, not covered by the Policies. Scott Bradley, Mount Vernon's claims adjuster, assessed the damage done by the vandals in breaking into the Property at $303.43, well below the Policies' $2,500 deductible. Thus, there was no coverage under the Policies. SJP filed this action

against Mount Vernon on February 10, 2014, alleging breach of contract (Count I) and Vexatious Refusal to Pay (Count II). Mount Vernon timely removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

SJP argues summary judgment on the issue of coverage is appropriate for several reasons. First, the Policies are vague and ambiguous regarding the distinction between "vandalism" and "theft" and should, therefore, be construed in favor of SJP. (Doc. No. 14 at 2) Next, even if the taking of the copper materials could be considered a theft, the vandalism loss is covered. (Id. at 4-10) Lastly, by definition the term "theft" only applies to the taking of personal property, not fixtures. (Id. at 10-12)

In response to SJP's motion (and as the basis for its own motion for summary judgment), Mount Vernon argues SJP cannot meet its burden to show the claimed loss occurred within a policy period. (Doc. No. 11 at 2-4) Even if the date of loss was not at issue, however, SJP cannot show the claimed damages are losses covered by the Policies. (Id. at 4-11) Lastly, SJP's claims are expressly excluded from coverage under the Policies. (Id. at 11-14)

**Discussion**

**Breach of contract**

In Count I, SJP alleges Mount Vernon breached its obligations under the Policies by "making an offer that represents a small fraction of the actual damage covered by the policy." (Complaint, Doc. No. 1-1 at ¶ 11) A court must apply the general rules of contract construction when interpreting an insurance policy, because insurance policies are contracts. Jaudes v. Progressive Preferred Ins. Co., 11 F.Supp.3d 943, 949 (E.D.Mo. 2014) (internal citation omitted). "The insurer is obligated to pay when the insured suffers a loss covered by the policy"

and when "the insurer refuses to pay … it breaches the contract." <u>Elder v. Allstate Ins. Co.</u>, 341 F.Supp.2d 1095, 1004 (D.Minn. 2004) (internal quotation omitted).

**Loss during policy period**

The Policies require the claimed loss occur during the policy period for coverage:

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:

    a. During the policy period shown in the Declarations . . .

(<u>See</u> Doc. No. 12-7 at 47)

Under Missouri law, the claimant has the burden to show that the policy covers the loss. <u>J.E. Jones Const. Co. v. Chubb & Sons, Inc.</u>, 486 F.3d 337, 340 (8th Cir. 2007). Mount Vernon contends SJP cannot meet its burden to show the claimed loss occurred within a policy period because it does not know whether the damages existed at the time the Property was purchased or occurred sometime later. (Doc. No. 11 at 2-4) SJP performed no inspection of the Property before the damages were discovered, approximately two years after it was purchased. (Plocker depo. at 13:10-14:1; 14:16-18; 15:16-18) Mr. Plocker testified he never saw the Property and had no personal knowledge of the condition of the interior of the house or whether it had kitchen cabinets, copper pipes or electrical wiring when SJP bought it. (<u>Id</u>. at 15:3-7; 26:2-22)

In response, SJP argues Mr. Plocker's lack of personal knowledge regarding the Property's condition is not dispositive of when the damage occurred, a fact question for the jury. (Doc. No. 16 at 2-5) SJP suggests that further discovery could disclose facts which would help establish when the damage to the Property likely occurred. For example, utility records could be subpoenaed to demonstrate when there was a spike in water usage, which would help pinpoint

when the vandalism to the Property occurred. The underwriting file for the Property and deposition of the underwriter would establish the condition of the Property at the time it was insured. SJP infers that the Property was undamaged when the Policies were issued since an insurance company would not insure damaged property.[4] (Doc. No. 16 at 3-4) SJP also indicates its intent to call as witnesses current and former neighbors of the Property, a representative of JP Morgan Chase, the former owner of the Property, and the previous residents of the Property to testify regarding its condition at and prior to the sale.

In reply, Mount Vernon argues SJP has not conducted any depositions or issued any subpoenas to third parties for production of records. (Doc. No. 18 at 2) This argument seems to suggest SJP must produce evidence affirmatively asserting the existence of a fact on which its claim relies. However, it is well settled that where the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented. See Foster v. Johns-Manville Sales Corp., 787 F.2d 390, 393 (8th Cir. 1986).

The record before the Court establishes the Policies were in effect from March 8, 2006 to March 8, 2009. The Property was purchased in July 2006. Mr. Plocker testified that once he was made aware of the damages to the Property by a handyman, he notified the police "within a matter of a few days." (Plocker depo. at 20:18-21:17; 22:3-23:12) The police report is dated November 1, 2008. In addition, it was the assessment of Mount Vernon's adjuster based on his inspection of the Property on November 5, 2008, that water had been discharged from the plumbing system for more than one month and that "the actual time during which water

---

[4] SJP contends that values assigned to the Property suggest it was not damaged at the time of purchase. Specifically, Mount Vernon insured the Property for $105,000, $19,000 above the sale price, and the St. Louis County Assessor's office assessed the Property at $106,600 in 2007 and 2008 and $100,000 in 2009 and 2010. (Doc. No. 16 at 2-3)

discharged may have been many months and perhaps more than one year." (Affidavit of Scott Bradley ("Bradley Aff."), Doc. No. 12-3 at ¶ 30) Given the effective dates of the Policies, the police report dated November 1, 2008, and the adjuster's assessment, the Court finds there is a genuine issue of fact as to when the damage to the Property occurred. Even assuming the damage to the Property occurred during the policy period, SJP must establish the damage is a covered loss in order to recover under the Policies.

**Covered loss**

The Policies cover "[v]andalism, meaning willful and malicious damage to, or destruction of the described property," but exclude coverage for loss or damage "caused by or resulting from theft." SJP argues this vandalism-but-not-theft provision is ambiguous and should be construed against Mount Vernon. (Doc. No. 14 at 2)[5] SJP contends the damage caused to the Property in the course of removing the copper materials was vandalism (id. at 5) and not excluded by the theft exclusion, which only applies to the taking of personal property, not fixtures. (Id. at 10-12) Mount Vernon, on the other hand, contends the claimed damage resulted from the copper theft rather than vandalism and is thus specifically excluded by the Polices' theft exclusion. (Doc. No. 11 at 6)

---

[5] Standard commercial property insurance policies such as the ones at issue here often provide coverage for vandalism, but not theft. Several authorities note that despite decades of litigation, courts remain split on how to interpret these provisions. See, e.g., Michael A. Sabatino, Annotation, *What Constitutes "Vandalism" or "Malicious Mischief" within Meaning of Insurance Policy Specifically Extending Coverage to Losses from Such Causes*, 56 A.L.R.5th 407 § 2[a] (1998); Morley Witus, *The Paradox of Insurance Coverage for Vandalism but Not Theft*, 56 Wayne L. Rev. 1747 (2010). Some courts hold an insurance company must pay for the damage to a building committed in the course of theft. These courts find the vandalism-but-not-theft provision grants coverage for the vandalism loss, i.e., willful, malicious damage, but not the theft loss, i.e., lost value of materials taken. See Aetna Cas. & Sur. Co. v. Ardizone, 481 So.2d 380 (Ala. 1985). Other courts hold that because the whole purpose was theft, the policy provision excludes damage to the building that was done in order to accomplish the theft. These courts either deny there is vandalism in this situation, or suggest the vandalism was caused by the theft. See Essex Ins. Co. v. Eldridge Land, L.L.C., 442 S.W.3d 666 (Tex.Ct.App. 2010); Smith v. Shelby Ins. Co., 936 S.W.2d 261 (Tenn.Ct.App. 1996).

In support of its position, SJP cites to a number of cases finding coverage for property damage (vandalism) in furtherance of theft. (Doc. No. 14 at 7-9) In Aetna Cas. & Sur. Co. v. Ardizone, 481 So.2d 380 (Ala. 1985), for example, the Alabama Supreme Court considered circumstances in which "vandals ... destroyed or removed electrical and refrigeration fixtures," causing "extensive damage" to a warehouse. Id. at 381. The court construed the term "vandalism" broadly in keeping with its common usage and concluded the policy provided "coverage for acts of vandalism or damage done to the building in connection with a burglary or theft." Id. at 384-85. Similarly, in Allstate Ins. Co. v. Coin-O-Mat, Inc., 202 So.2d 598 (Fla.Ct.App. 1967), the Florida District Court of Appeals held the loss suffered when persons entered a laundromat owned by the insured and severely damaged 12 washing machines was not excluded from coverage even though it may have occurred in the course of an actual or attempted theft or burglary. Id. at 599. In Haas v. Audubon Indemnity Co., 722 So.2d 1022 (La.Ct.App. 1998), the Louisiana Court of Appeals explained the theft provision was merely "a narrow exception to the vandalism coverage" and did "not exclude vandalism damage caused prior to or concurrently with a theft." Id. at 1027.

The Court notes that the cases cited by SJP are distinguishable in some respects from the facts presented in the instant case. In Ardizone, the court did not provide the exact wording for the vandalism coverage in that case. As a result it is impossible to determine how different it is from the Policies at issue here. In Coin-O-Mat, the court found the insurer failed to carry its burden of proving the plaintiff's loss came under the policy's theft exclusion, making summary judgment in favor of plaintiff appropriate. In Haas, the court concluded that because of the extensive nature of the damage done to the property ("utter destruction"), the evidence was sufficient to demonstrate the damage was done maliciously and thus should be considered to

have resulted from vandalism. Because of the differing circumstances presented in these cases, the Court does not find them persuasive.

SJP also relies on Beauty Supplies, Inc. v. Hanover Ins. Co., 526 S.W. 2d 75 (Mo.Ct.App. 1975). In that case, burglars broke into the insured's building, uncoupled pipes to the bathroom, stole the bathroom fixtures, and left water running which damaged covered ground floor property. 526 S.W. 2d at 76. The insured sought coverage for vandalism, but the insurers argued the direct and proximate cause of the loss was the acts of thieves and burglars, excluded under the policy. Id. The court held the proximate cause of the loss was the vandalism, a specifically insured risk, despite the antecedent contributing circumstance of burglary, explaining that "[a]n antecedent contributing circumstance is generally ignored in determining proximate cause" as it is a "situation which merely sets the stage for the later event." Id.

Beauty Supplies is not dispositive since parties may contractually agree that the efficient proximate cause doctrine does not apply to certain exclusions in an insurance policy. See TNT Speed & Sport Center, Inc. v. American States Insurance Co., 114 F.3d 731 (8th Cir. 1997). Here, the parties' intent to contract around the doctrine of efficient proximate cause is clearly evidenced by the plain meaning of the exclusionary language of the Policies:

> Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Turning to the vandalism-but-not-theft provision of the Policies, the Court is guided by well settled rules governing the interpretation of insurance policies. A court must give the policy terms their plain and ordinary meaning, unless a term is defined in the policy or is ambiguous. Jaudes, 11 F.Supp.3d at 949. Contract language is ambiguous "only if it is reasonably open to different constructions and there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." Burns v. Smith, 303 S.W.3d 505, 509 (Mo.2010). When an ambiguity

exists in an insurance policy, the court must interpret the policy in favor of the insured. Todd v. Missouri United School Ins. Council, 223 S.W.3d 156, 160 (Mo. 2007). If, however, the policy is unambiguous, the court must enforce the contract's terms as written. Id. See also Nationwide Mut. Ins. Co. v. Harris Medical Associates, LLC, 973 F.Supp.2d 1045, 1053 (E.D.Mo. 2013).

The Court has carefully reviewed the policy language and finds it unambiguous, i.e., not susceptible of "multiple interpretations." St. Paul Fire and Marine Ins. Co. v. Missouri United School Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996). The Policies cover "[v]andalism, meaning willful and malicious damage to, or destruction of the described property," but exclude coverage for loss or damage "caused by or resulting from theft." The theft exclusion appears within the paragraph providing coverage for vandalism and was clearly intended as an exclusion or exception to the vandalism coverage. Smith v. Shelby Ins. Co. of Shelby Ins. Group, 936 S.W.2d 261, 265 (Tenn.Ct.App. 1996) ("It is significant that the exclusionary language pertaining to damage "[c]aused by or resulting from theft" follows immediately after language pertaining to the covered loss of vandalism. We believe the parties purposely intended to reflect their understanding that damage from theft would not be included within the general concept of vandalism."). See also, Essex Ins. Co. v. Eldridge Land, LLC, 442 S.W.3d 366, 374 (Tx.Ct.App. 2010) (addressing identical policy language).

In addition, the theft exclusion has an exception for damage caused by "the breaking in or exiting of burglars." This "breaking in" exception implies that, except for damage to the building while entering and exiting, no other building damage is covered when there is theft. This exception resolves any ambiguity as to whether "loss caused by theft" includes collateral damage caused by theft. Specifically, "if the [theft] exclusion included all coverage for collateral damage caused by burglars during the course of their theft, then there would be no need for this exception

to the exclusion; it would be superfluous." Summit Bank & Trust v. American Modern Home Ins. Co., 2014 WL 3512770, at *3-4 (D.Colo. July 15, 2014). In interpreting an insurance contract, the Court must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." Jaudes, 11 F.Supp.3d at 949 (quoting Dibben v. Shelter Ins. Co., 261 S.W.3d 553, 556 (Mo.Ct.App.2008)). If there was coverage for all willful malicious building damage done in the course of carrying out theft, then there would be no need to specify that a certain subset of such damage (entering and exiting) was covered despite the theft exclusion." Witus, supra, at 1756. Giving this exception its plain meaning, there is no coverage for building damage when there is vandalism in furtherance of theft.

SJP further argues that "theft" normally refers only to the taking of personal property.[6] (The Policies at issue contain no definition of "theft.") Because the copper materials taken from the Property were embedded in the building walls and ceilings, they were fixtures, which are considered to be part of the real property, not personal property. Thus, there was no theft and the theft exclusion does not apply. (Doc. No. 14 at 10-12)

The problem with this argument is that virtually all of the cases involving vandalism-but-not-theft clauses either state or assume that taking copper fixtures from a building is theft. Witus, supra, at 1758-59 (citing Aetna, 481 So.2d at 380-85; Smith, 936 S.W.2d at 266; Certain Underwriters at Lloyds, London v. Law, 570 F.3d 574, 579 (5th Cir. 2009)). None of these

---

[6] Black's Law Dictionary defines "theft" as "[t]he felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny." BLACK'S LAW DICTIONARY 1615 (9th ed. 2009). There are, however, broader definitions of "theft" that include all forms of property. Webster's Dictionary defines "theft" as "the taking of property unlawfully," without limiting the definition to personal property. WEBSTER'S NEW INT'L DICTIONARY 2369 (3d ed. 2002). One authority notes that federal courts have embraced a "generic definition of theft," which refers simply to wrongful taking of or exercise control over property, without restricting it to personal property. See 56 Wayne L. Rev. at 1757, citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 189 (2007).

copper theft cases analyze whether "theft" applies to fixtures or real property, because the argument was apparently not raised. However, cases allowing coverage and denying coverage in these circumstances all understand "theft" to encompass extraction of copper materials from building structures. Id. (citing Haas, 722 So.2d 1022; Aetna, 481 So.2d at 380; Smith, 936 S.W.2d at 261; Sharplin v. Cas. Reciprocal Exch., 628 So.2d 217 (La. Ct. App. 1993); State Auto. Mut. Ins. Co. v. Troutwein, 414 S.W.2d 587 (Tex. 1971); Pryor v. State Farm Fire & Cas. Co., 74 Cal. App.3d 183 (1977); Beauty Supplies, 526 S.W.2d 75).

**Exclusions**

Even if the theft exclusion does not apply, the Policies exclude coverage for loss or damage caused by continuous discharge of water from a plumbing system for 14 days or more, or by fungus, wet rot, dry rot or bacteria. It is undisputed that water was discharged into the Property. Mount Vernon contends summary judgment should be granted in its favor based on these exclusions. (Doc. No. 11 at 11-14)

In Missouri, the burden of proof is on the insurer to show an exclusion clause applies. Lexington Ins. Co. v. Integrity Land Title Co., 852 F. Supp. 2d 1119, 1131-32 (E.D. Mo. 2012) aff'd, 721 F.3d 958 (8th Cir. 2013). If the insurer makes the requisite showing of the existence and applicability of the exclusion, the burden shifts back to the insured to establish the applicability of an exception to the exclusion. Bell Lumber & Pole Co. v. U.S. Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995). Although exclusion clauses are to be strictly construed against the insurer, the Missouri Supreme Court has stated that "where language in an insurance contract is unequivocal, it is to be given its plain meaning notwithstanding the fact that it appears in a restrictive provision of a policy." Cawthon v. State Farm Fire & Cas. Co., 965 F.Supp. 1262,

1264 (W.D.Mo. 1997) (quoting Harrison v. MFA Mut. Ins. Co., 607 S.W.2d 137, 142 (Mo. banc 1980)).

To support the application of these exclusions, Mount Vernon relies on the affidavit of Scott Bradley and photographs taken of the damage to the Property. (See Doc. No. 12-1) During his inspection of the Property, Mr. Bradley observed significant amounts of fungus on the basement ceiling and walls, as well as in the first floor bedroom and the kitchen. (Bradley Aff. at ¶¶ 20-23, 26-28) He also observed significant rusting of metal surfaces in the basement. (Id. at ¶ 24) Wooden floor boards were warped, buckled and deteriorated. (Id. at ¶ 25) According to the adjuster, the condition of the Property was the result of prolonged exposure to moisture, presumably from water flowing from the plumbing system. (Id. at ¶ 30) Based on his experience, it was Mr. Bradley's assessment that water discharged for "many months" and "perhaps more than one year" in order to account for the condition of the Property as he found it. (Id.)

SJP maintains its claims are not expressly excluded by the Policies because the removal of the pipes was not theft but rather an act of vandalism – a covered cause of loss under the Policies. (Doc. No. 16 at 11-12) Assuming arguendo that the removal of the copper materials was vandalism and not theft, the evidence of record is that the discharge of water was continuous for a period of 14 days or more. SJP does not address this part of the exclusion. Moreover, the Policies clearly exclude coverage for damages resulting directly or indirectly from fungus.

In summary, the Court finds and concludes the Policies unambiguously exclude coverage for the damages claimed by SJP as either caused by or resulting from theft, and no exception to the theft exclusion applies. Mount Vernon is, therefore, entitled to summary judgment on SJP's claim for breach of contract.

**Vexatious refusal[7]**

In Count II, SJP alleges Mount Vernon's rejection of its settlement demand was done willfully and without reasonable cause or excuse. (Compl. at ¶ 13) Under Missouri law, a claim of vexatious refusal to pay requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay and (3) that the insurer's refusal was without reasonable cause or excuse. Macheca Transport v. Philadelphia Indem. Ins. Co., 649 F.3d 661, 674 (8th Cir. 2011) (citing Dhyne v. State Farm Fire & Cas. Co., 188 S.W.3d 454, 457 (Mo.2006)). "The test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage." Drury Co. v. Missouri United Sch. Ins. Counsel, 455 S.W.3d 30, 38 (Mo. Ct. App. 2014) (quotation omitted). There is no vexatious refusal when the insurer has reasonable cause to believe and does believe there is no liability under its policy and that it has a meritorious defense. Macheca, 649 F.3d at 674 (citing Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 55 (Mo.Ct.App. 1998)).

The facts and circumstances, as set forth in the record in this case, do not evidence a willful and unreasonable refusal to pay on the part of Mount Vernon. For example, in contrast to cases in which there was evidence of vexatiousness, the record here reveals Mount Vernon reviewed and investigated SJP's claim. See DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 710 (Mo. 1984) (adequacy of an insurer's investigation of a claim may be considered evidence of vexatiousness). Moreover, Mount Vernon stated its grounds for denial. See Allen v. State Farm Mutual Automobile Insurance Co., 753 S.W.2d 616, 620-21

---

[7] Neither party addressed this claim in the summary judgment briefing.

(Mo.Ct.App. 1988) (denial of liability without stating any ground for denial is sufficient to warrant the submission of vexatious damages).

As discussed above, the Policies do not provide coverage for SJP's claimed damages and no breach of contract occurred. As a matter of law, then, SJP cannot show that Mount Vernon lacked a reasonable basis for refusing to pay its claim. Mount Vernon is, therefore, entitled to summary judgment on SJP's claim for vexatious refusal.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff SJP Properties, Inc.'s Partial Motion for Summary Judgment as to the Extent of Coverage Only [13] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Mount Vernon Fire Insurance Company's Motion for Summary Judgment [11] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Mount Vernon Fire Insurance Company's Motion to Strike [19] is **DENIED**.

A separate Judgment will accompany this Memorandum and Order.

                                                                                                                           /s/ John A. Ross

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 27th day of July, 2015.